IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

GEORGE W. SWAN,

               Petitioner,

vs.

DANIEL F. MARTUSCELLO,

               Respondent.

No. 9:16-cv-01138-JKS

MEMORANDUM DECISION

George W. Swan, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Swan is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Coxsackie Correctional Facility. Respondent has answered the Petition, and Swan has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On July 28, 2011, Swan was charged with first-degree attempted rape, second-degree assault, resisting arrest, and criminal obstruction of breathing or blood circulation. The charges stemmed from an incident on May 12, 2011, when it was alleged that Swan attempted to forcibly engage in sexual intercourse with "Jane Doe" and then prevented a police officer from affecting a lawful arrest.

Prior to trial, the court held a *Huntley*[1] hearing regarding the admissibility of Swan's statements as he was taken into custody by the police. The hearing court ruled that the statements were admissible because Swan was not subjected to a custodial interrogation and instead had

---

[1] *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

spontaneously volunteered the statements in response to the victim's statement. Defense counsel also asked the court to allow the defense to cross-examine the victim regarding her previous prostitution convictions. The court denied the request after finding that the last conviction was more than three years old and the convictions were inflammatory and irrelevant. The court also found admissible as a present sense impression a 911 call made during the incident. Before jury selection, however, the trial court ruled that a portion of Swan's statement to law enforcement was inadmissible as overly prejudicial.

At trial, eight witnesses testified for the People. One of those witnesses was Syracuse Police Officer Ty Cogan, a patrol officer who responded to a call reporting a woman being strangled and rape. Officer Cogan testified that, as he handcuffed Swan, Swan said, "Yeah right, like this even matters. I can't rape a fucking prostitute. I'll beat this one like I did the last one." The trial court struck the last sentence from the record, but Swan stated in court, "tell the jury she is a prostitute too." He then continued, "She has eleven convictions for prostitution. Tell them that."

The court then excused the jury and held a side-bar discussion with the attorneys. The court then stated that it had stricken the testimony previously found inadmissible and would instruct the jury to disregard that statement. Defense counsel moved for a mistrial, arguing that Officer Cogan had intentionally recited the complete statement. The prosecutor responded that he had not reminded the officer not to testify about the last portion of Swan's statement and that the police officer's mistake was unintentional. Defense counsel argued that the jury would now believe that Swan had a prior rape charge, and a curative instruction would not be sufficient. The prosecutor indicated that he would stipulate that Swan had no prior accusations against him for sexual assault, despite the fact that Swan had a previous misdemeanor sex offense conviction. Defense counsel

2

stated that he was satisfied with that additional curative instruction. The jury was brought in and instructed to disregard the officer's last statement after the word prostitute. The court also instructed the jury that Swan had no prior arrests or convictions for sexually-related assaults.

At the conclusion of trial, the jury found Swan guilty of first-degree attempted rape, second-degree assault, and resisting arrest. The court subsequently sentenced Swan to an aggregate determinate imprisonment term of 15 years followed by 5 years of postrelease supervision.

Swan then filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. In that motion, Swan argued, among other reasons, that he had been deprived of a fair trial because the 911 call reporting the rape had been played multiple times, and trial counsel was ineffective for a variety of reasons. The county court denied the motion without a hearing in a reasoned, unpublished opinion issued on January 16, 2013. Swan did not seek leave to appeal the denial of the motion in the Appellate Division.

Through counsel, Swan also appealed his conviction, arguing that: 1) counsel rendered ineffective assistance; 2) the trial court gave an insufficient curative instruction regarding Officer Cogan's recitation of Swan's precluded statement; 3) the prosecutor committed misconduct by vouching for the People's witnesses and making improper remarks during summation; and 4) his sentence was unduly harsh and excessive. The Appellate Division of the New York Supreme Court unanimously affirmed the judgment against Swan in a reasoned opinion issued on March 27, 2015. *People v. Swan*, 4 N.Y.S.3d 462, 463 (N.Y. App. Div. 2015). Swan applied for leave to appeal in the New York Court of Appeals, which was summarily denied on September 22, 2015. *People v. Swan*, 40 N.E.3d 586, 586 (N.Y. 2015).

Swan timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on September 19, 2016.  Docket Nos. 1, 1-1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Swan raises the following claims: 1) defense counsel was ineffective for failing to: a) object to prosecutorial misconduct and admission of certain evidence, b) present better argument in support of admitting the victim's prior record of prostitution, c) make better arguments opposing the prosecution's *Sandoval*[2] application, d) object to an allegedly-biased juror, e) refrain from withdrawing the mistrial motion following Officer Cogan's testimony, f) pursue a justification defense, g) present certain witnesses and evidence, and h) seek a lesser-included offense of third-degree assault; 2) the court's curative instruction was insufficient to dissipate the prejudice he suffered from Officer Cogan's reference to his inadmissible statement; 3) the prosecutor committed misconduct by vouching for prosecution witnesses and making improper remarks during summation; 4) his confrontation rights were violated when the prosecution played a 911 call at trial; 5) the prosecution withheld a cooperation agreement with the victim in violation of *Brady*;[3] 6) he was denied counsel when he first appeared in local court for arraignment following his arrest; 7) he was deprived of the right to represent himself; 8) the evidence was legally insufficient to sustain his conviction; 9) his sentence is harsh and excessive; and 10) he was deprived of his right to an impartial jury because it included a biased juror.

---

[2]     *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (a shorthand reference to the New York procedure for determining in advance whether evidence of prior crimes is admissible for impeachment purposes in the event the defendant testifies).

[3]     *Brady v. Maryland*, 373 U.S. 83 (1963).  The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those

grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. Exhaustion

As an initial matter, Respondent correctly contends that the majority of Swan's claims are unexhausted and procedurally barred. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert

the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

In this case, most claims were not fairly presented to New York's highest state court. The only arguments properly presented to the New York Court of Appeals were those referenced in Swan's counseled application for leave to appeal alleging ineffective assistance of counsel. Specifically, the leave letter addressed the following alleged deficiencies now presented before this Court in support of Ground 1: a) failure to object to the prosecutor's improper statements denigrating the defense and appealing to the jury, b) failure to present better argument in support of admitting the victim's prior record of prostitution, c) failure to make better arguments opposing the prosecution's *Sandoval* application, d) failure to object to an allegedly-biased juror, and e) failure

to refrain from withdrawing the mistrial motion following Officer Cogan's testimony. Accordingly, those ineffective assistance arguments are properly exhausted.

However, while counsel included Swan's appellate brief, he did not mention any of the other issues raised. It therefore does not appear that Swan "fairly presented" those claims to the New York Court of Appeals. *See Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (finding that appellate counsel's "arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction"); *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (federal habeas court assumes for exhaustion purposes "that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below where those claims were not presented to the New York high court of review" (citation and internal quotation marks omitted)); *Grey*, 933 F.2d at 119 (petitioner failed to exhaust claims for purposes of federal habeas review where the claims were not presented in his letter application to the Court of Appeals, even though petitioner attached his brief to the Appellate Division which did raise the claims at issue). Swan raised some of his ineffective assistance and prosecutorial misconduct arguments in his CPL § 440.10 motion, but he did not seek leave in the Appellate Division to appeal the trial court's denial of the motion. Thus, Ground 2 through 10 are entirely unexhausted, as are his claims that counsel failed to present certain witnesses and evidence, seek a lesser-included offense of third-degree assault; and pursue a justification defense (Grounds 1f-1h).

This Court nonetheless may deny these claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, the Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.    Merits

As discussed below, even if Swan had fully exhausted his claims, he would not be entitled to relief on them. Moreover, the exhausted ineffective assistance claims addressed in Ground 1 are also without merit, as also discussed below.

Ground 1.    *Ineffective Assistance of Counsel*

Swan first argues that counsel was ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Swan must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the

*Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful

representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Swan's ineffective assistance claims must fail, however, even under the more favorable New York standard. Swan first faults counsel for failing to object to various statements by the prosecutor which Swan claims amounted to "vouching, denigration or appeals to sympathy." As an initial matter, however, the record shows that counsel successfully objected to two instances of alleged vouching when the prosecutor asked the victim whether she initially had concerns that the police officers would believe her. Moreover, the state court concluded with respect to the remaining instances that "none of the alleged misconduct by the prosecutor was so egregious as to deprive [Swan] of a fair trial" and that Swan was not denied effective assistance by counsel's failure to object. *Swan*, 4 N.Y.S.3d at 463. As discussed below, those conclusions are both reasonable and fully supported by the record. Swan therefore fails to show that he was prejudiced by counsel's inaction.

In a similar vein, Swan additionally raises ineffective assistance claims with respect to his freestanding claims regarding an allegedly biased juror and the inadmissible testimony of Officer Cogan. As discussed more thoroughly below, Swan fails to demonstrate that error or prejudice with respect to either of those claims, and thus he likewise does not establish that counsel was ineffective with respect to either instance. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

Swan also alleges that counsel should have presented better arguments in support of admitting the victim's prior record of prostitution. Swan does not, however, indicate what "better arguments" could have been made. "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). A s such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review). Indeed, the record reflects that counsel repeatedly argued for admission of the victim's criminal history. New York CPL § 60.42, New York's Rape Shield Law, provides that evidence of a victim's past sexual encounters is generally inadmissible

at a sexual abuse trial, unless certain exceptions are met.[4] Swan fails to demonstrate how further argument could have overcome this law and allowed the admission of that evidence.

Similarly, there is no basis for concluding that counsel should have made better arguments in opposing the prosecution's *Sandoval* application. The record reflects that counsel opposed the application and was successful in part in that the court limited the prosecutor to cross-examination on the fact but not about the nature or facts of the convictions or the underlying acts. Swan fails to show that any counsel could have taken a different approach and been more successful. *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either Strickland prong" (citation omitted)).

---

[4]     That section provides:

Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:

1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or
2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law within three years prior to the sex offense which is the subject of the prosecution; or
3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time; or
4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or
5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

N.Y. CRIM. PROC. LAW § 60.42.

Swan further faults counsel for failing to pursue a justification defense. The record, however, indicates that counsel argued during opening and closing statements that Swan struggled with the victim to recover money stolen during a drug deal and attempted to elicit testimony to support that claim. That the jury believed the victim, who denied that she ever offered to sell Swan drugs, over Swan and rejected any theory that Swan was the victim of a robbery does not establish that counsel was ineffective. To the extent Swan argues here that counsel should have pursued a justification defense to the attempted rape charges on the basis that the victim was allegedly a prostitute, such claim is patently baseless and incorrect.

Swan also avers that counsel should have presented three character witnesses and evidence such as a "booking video, photographs, sound, ATM receipts, the Belt that were holding Mr. Swan's pants up," and the victim's allegedly-"exculpatory medical records." With respect to the character witnesses, Swan does not specify the proposed substance of any of the witnesses' testimony, but given that the presentation of evidence of Swan's good character would have opened the door to evidence of Swan's criminal history and bad character, counsel likely made the tactical decision to omit the character evidence on the basis that it would do more harm than good to Swan's case. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)). Likewise, the evidence he identifies is not exculpatory and largely irrelevant, such that Swan fails to establish any reasonable probability of a different result had the evidence been introduced.

Finally, Swan faults counsel for failing to seek a lesser-included offense of third-degree assault. The record, however, belies Swan's claim because it shows that counsel sought the charge, and the trial court rejected the request on the basis that, under New York law, third-degree assault was not a lesser-included offense of the charged second-degree assault charge. *See People v. Miguel*, 423 N.E.2d 400, 401-02 (N.Y. 1981). Swan is therefore not entitled to relief on any argument advanced in support of this ground.

Ground 2.     *Prejudicial Testimony*

Swan next argues that Officer Cogan's reference during direct examination to a statement the trial court had previously deemed inadmissible was overly prejudicial and deprived him of a fair trial. As previously noted, the trial court had ruled that Swan's statement at the time of his arrest, "I'll beat this one like I beat the last one," was inadmissible because its probative value was outweighed by the potential prejudice that the jury might infer from the statement that Swan had committed a similar crime in the past. Officer Cogan nonetheless referred to the statement during direct examination. With the consent of defense counsel, the court immediately struck the testimony and instructed the jury to disregard it. Shortly thereafter, the court repeated the instruction to disregard the testimony and gave an affirmative instruction that Swan had not previously been accused of sexual assault. Swan now claims, as he did on direct appeal, that the trial court's instruction did not cure the prejudice he suffered as a result of Officer Cogan's reference to the excluded statement.

With respect to a prosecutor's solicitation of inadmissible evidence, the admission of evidence in a state criminal proceeding is not subject to federal habeas review unless a specific federal constitutional guarantee is violated or the error is of such magnitude that the result is a denial

of fundamental due process and the right to a fair trial. *See Estelle*, 502 U.S. at 67. State law foundational and admissibility questions raise no federal question. *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir.1995). Nonetheless, in *Payne v. Tennessee*, the Supreme Court stated that if evidence introduced at a criminal trial "is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 170–83 (1986)). *Darden* provides that the "relevant question" is whether admission of the challenged evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181; *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) ("The relevant question in this case . . . is whether the admission of evidence regarding petitioner's prior death sentence so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process").

Under all the circumstances of this case, the Court agrees with the Appellate Division that "the curative instructions must be deemed to have corrected the error to [Swan's] satisfaction." *Swan*, 4 N.Y.S.3d at 463. This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis v. Franklin*, 471 U.S. 307, 323-24 & n.9 (1985) (discussing the subject in depth). Swan provides no reason to believe otherwise, particularly given that the additional affirmative instruction was beneficial to Swan, who had, contrary to the instruction, suffered a third-degree sexual abuse conviction in 1994. Moreover, in light of the overwhelming evidence against Swan, including his properly-admitted statement expressing his belief that he was entitled to have sex with the victim because she was allegedly a prostitute, Swan fails to demonstrate

that the verdict would have been different absent Cogan's reference to the excluded portion of the statement. Swan is thus not entitled to relief on this claim.

Ground 3.    *Prosecutorial Misconduct*

Swan additionally contends that the prosecutor committed misconduct through various improper statements. As an initial matter, Respondent correctly argues that Swan's prosecutorial misconduct claim is procedurally barred from federal habeas review. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the prosecutorial conduct claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York Criminal Procedure Law ("CPL") § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As the record supports that defense counsel did not raise this particular contention at trial, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and his prosecutorial misconduct claim must be denied on that basis.

Moreover, Swan is not entitled to relief on the merits of his prosecutorial misconduct claim. It is improper as a matter of both state and federal law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks on defense counsel. *See, e.g.*, *United States v. Biasucci*, 786 F.2d 504, 513-14 & n.9 (2d Cir. 1986) (characterizing as "clearly . . . inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks against

defense counsel[,] . . . [f]or instance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record omitted)); *People v. LaPorte*, 762 N.Y.S.2d 55, 57-58 (N.Y. App. Div. 2003) (reversing conviction where prosecutor's remarks during summation were not fair response to defense counsel's summation and thus denied defendant a fair trial because evidence against defendant was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense theory as "mumbo jumbo," and "warned the jurors . . . several times that defense counsel was manipulating them and trying to prevent them from using their common sense") (citation omitted). But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (citation and internal brackets omitted).

Here, however, the challenged comments toward petitioner and the supportive comments on the victim may be viewed as proper inferences from the evidence presented at trial and constituted a fair response to defense counsel's summation, in which he challenged the veracity of the prosecution's witnesses and the strength of its case. *See Knight v. Walsh*, 524 F. Supp. 2d 255, 287 (W.D.N.Y. 2007). In short, after an independent review of the prosecutor's summation, the Court agrees with the Appellate Division that none of the prosecutor's statements rose to the level of egregious conduct required for habeas relief. The Appellate Division's rejection of this claim was both reasonable and fully supported by the record, and this claim therefore also must fail.

Ground 4.     *Confrontation Violation*

Swan next avers that the playing of Lester Hall's 911 call at trial violated his Sixth Amendment right to confront witnesses. The Confrontation Clause of the Sixth Amendment mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987). This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial. *Crawford,* 541 U.S. at 53-54. Here, however, the record reflects that Lester Hall testified and that Swan had a full and fair opportunity to cross-examine him, thus dooming any claim of a confrontation violation.

Moreover, the Confrontation Clause bars only testimonial statements. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004)*; United States v. Feliz*, 467 F.3d 227, 232 (2d Cir. 2006) (explaining "that a statement produced through the involvement of government officers and with an eye towards trial is testimonial," and those that are not produced under such terms are nontestimonial) (internal quotation marks and citations omitted). Even if Hall had not testified and was not available for cross-examination, Swan does not allege facts that would raise a Confrontation Clause issue under federal law in any event. *See Davis v. Washington*, 547 U.S. 813, 826-28 (2006) (911 caller who identified assailant was not acting as witness or testifying and thus admission of 911 call did not invoke Confrontation Clause issue). Swan is thus not entitled to relief on this claim.

Ground 5.    *Brady Violation*

Swan additionally argues that the prosecution failed to disclose to Swan that the victim had a cooperation agreement with the prosecution and that her testimony was given pursuant to that agreement. To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence

was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Swan fails to establish any of these factors because, simply put, there is no evidence in the record that the victim had any type of agreement with the prosecution. In discovery, defense counsel specifically requested that the prosecution disclose "the complete substance of any plea agreement with any Prosecution witness and/or any promises made whatsoever to a prosecution witness." The prosecution responded that they were unaware of any such arrangements. Swan nonetheless argues that the People obtained a cooperation agreement with the victim to secure her testimony. He provides no support for his bald contention however, and thus fails to sustain his burden of proof to show that exculpatory material existed and was withheld. Swan is not entitled to relief on this ground. *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.").

Ground 6.    *Denial of Counsel*

Swan next complains that he was denied counsel when he first appeared in local court for arraignment following his arrest. However, the record reflects that the action for which he appeared was subsequently dismissed due to the People's failure to apprise him of his grand jury rights in accordance with New York law. Swan was subsequently indicted again and was represented by counsel when he appeared to face those new charges on August 4, 2011. The record thus shows that Swan was not denied counsel at any critical stage of the proceedings on the charges underlying his conviction, and habeas relief is not warranted.

Ground 7.    *Deprivation of Right of Self-Representation*

Swan similarly argues that he was deprived of the right to represent himself. The Sixth Amendment "right to assistance of counsel implicitly embodies a correlative right to dispense with a lawyer's help." *Faretta v. California*, 422 U.S. 806, 814 (1975) (citation and internal quotation marks omitted). "When an accused manages his own defense, he relinquishes, as purely a factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." *Id*. at 835 (citation and internal quotation marks omitted). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (citation and internal quotation marks omitted). There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Rather, the determination of whether a defendant has knowingly and intelligently waived his

rights to counsel depends on "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* In addition, the court must specifically warn a defendant electing to proceed *pro se* "of the hazards ahead." *Id*. at 88-89.

In this case, however, the record is devoid of any support for Swan's contention that he made a clear and unequivocal request to represent himself. The record reflects that, at the close of the People's case, Swan complained that his injuries following his arrest had not been raised to the jury and also moved for a mistrial based on Officer Cogan's statements because he disagreed that the curative instruction agreed to by defense counsel was sufficient. Although he informed the Court that "he disagree[d] with his attorney," when the court stated that it was time for the defense to begin its case, Swan did not object to counsel calling a witness and proceeding. The record thus belies any contention that Swan clearly and unequivocally requested to represent himself or that there was a complete breakdown in his relationship with counsel that "resulted in [a] total lack of communication preventing an adequate defense." *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001). Swan is not entitled to relief on this claim.

Ground 8.    *Insufficiency of the Evidence*

Swan additionally avers that the evidence was legally insufficient to sustain his conviction. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine

23

whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Swan attacks the value of the evidence against him by identifying inconsistencies in the testimony against him and alleging that the prosecution's witnesses were not credible. But this Court is precluded from either re-weighing the evidence or assessing the credibility

of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

In this case, the testimony of the victim, Officer Cogan, and the corroborating accounts of two other eyewitnesses provided sufficient evidence that a reasonable factfinder could find beyond a reasonable doubt that Swan was guilty of attempted first-degree rape, second-degree assault, and resisting arrest. Though it might have been possible to draw a different inference from the evidence presented at trial based on the inconsistencies and motivations identified by Swan, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Swan bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that Swan was guilty of the charges, especially considering the double deference owed under *Jackson* and the AEDPA. Swan therefore cannot prevail on an insufficiency of the evidence claim either.

Ground 9.     *Harsh and Excessive Sentence*

Swan further contends that his sentence is harsh and excessive. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the

province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Here, Swan was convicted of attempted first-degree rape, and sentenced to 15 years' imprisonment plus five years of postrelease supervision. Swan does not dispute that his sentence was within the statutory range of mandated determinate sentences, and indeed, he notes that he received the "maximum term of imprisonment." *See* N.Y. PENAL LAW § 70.02(3)(b). Because Swan's sentence fell within the state's statutory guidelines, a harsh and excessive sentence claim is not cognizable on federal habeas review.

And to the extent that Swan's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive

terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Accordingly, habeas relief is not warranted on this sentencing claim in any event.

Ground 10.    *Juror Bias*

Finally, Swan avers that a juror was biased against him. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury*." U.S. CONST. amend VI (emphasis added). The right to an impartial jury is further applicable to the states by way of the Fourteenth Amendment. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). If a defendant is denied an impartial jury, his due process rights and his Sixth Amendment rights are violated. *See Irvin v. Dowd*, 366 U.S. 717, 721-23 (1961).

A criminal defendant claiming that biased jurors were seated on his jury has the burden of proving prejudice, namely "the actual existence of such an opinion of the juror as will raise the presumption of partiality." *Id.* at 723 (internal citation and quotation omitted). A trial judge's determination of juror impartiality is entitled to a presumption of correctness, and a court may overturn such a determination on federal habeas review only for manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984); *see also Skilling v. United States*, 561 U.S. 358, 386 (2010) (the deference afforded a trial judge's determination of impartiality "is at its pinnacle"). A habeas court must determine "whether there is fair support in the record for the state court's conclusion that the jurors [in a trial] would be impartial." *Patton*, 467 U.S. at 1038.

Here, the record reflects that, during voir dire, one juror suggested that she would be "[a] little bit" troubled if Swan did not testify. However, the juror did not respond when the trial court specifically asked if anyone could not accept the principle that, if Swan "chooses not to testify, you are not to draw any inferences against him." Nor did the juror express any doubt about her ability to follow the court's later instructions when discussing Swan's right not to testify. Under these circumstances and in light of the juror's assurance that she could follow the court's instructions, there is fair support in the record for the trial court's conclusion that the juror would be impartial, and Swan fails to establish that the juror was "actually biased" against Swan. This claim is therefore denied.

## V. CONCLUSION

Swan is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El,*

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 27, 2018.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
